ORAL ARGUMENT: NOVEMBER 17, 2009

№ 09-7051

# In The United States Court of Appeals for the District of Columbia Circuit

DISTRICT OF COLUMBIA,
*Appellant,*

v.

JOHN A. STRAUS and JAMES E. BROWN & ASSOCIATES, PLLC,
*Appellees.*

On Appeal from the United States District Court for
the District of Columbia, No. 08-cv-2075,
Hon. Richard W. Roberts, United States District Judge

**Brief of The American Civil Liberties Union of the National Capital Area As *Amicus Curiae* In Support of Appellees and Affirmance**

*OF COUNSEL:*
ARTHUR B. SPITZER
KAITLIN DUNNE
AMERICAN CIVIL LIBERTIES UNION
OF THE NATIONAL CAPITAL AREA
1400 20th Street, NW, Suite 119
Washington, DC 20036
(202) 457-0800

October 9, 2009

CAROLINE M. BROWN
ROGER A. FORD
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
(202) 662-6000

*Counsel for Amicus Curiae*
*American Civil Liberties Union*
*of the National Capital Area*

## CERTIFICATION AS TO PARTIES, RULINGS, AND RELATED CASES

1. **Parties and *amici.*** Except for the following, all parties, intervenors, and *amici* appearing before the district court and in this Court are listed in the brief of the District of Columbia. On September 25, 2009, *amicus curiae* American Civil Liberties Union of the National Capital Area filed a notice of intent to file an amicus brief. *Amicus curiae* did not appear in the district court.

Pursuant to Circuit Rule 26.1, *amicus curiae* submits the following disclosure statement: The American Civil Liberties Union of the National Capital Area is the District of Columbia affiliate of the American Civil Liberties Union, the nation's leading civil-liberties organization. ACLU-NCA consists of two entities: the American Civil Liberties Union of the National Capital Area, Inc., a 501(c)(4) nonprofit District of Columbia corporation, and the American Civil Liberties Union of the National Capital Area Fund, Inc., a 501(c)(3) nonprofit District of Columbia corporation. Neither corporation has any parent companies or publicly held companies with an ownership interest. No members have issued shares or debt securities to the public.

2. **Rulings under review.** References to the rulings at issue appear in the brief of the District of Columbia.

3. **Related cases.** References to the related cases appear in the brief of the District of Columbia. *Amicus curiae* is not aware of additional related cases.

## TABLE OF CONTENTS


Certification as to Parties, Rulings, and Related Cases .......... i

Table of Contents .......... ii

Table of Authorities .......... iii

Glossary .......... vi

*Amicus Curiae's* Statement of Identity, Interest in Case, and Source of Authority to File .......... 1

Background .......... 3

I. The IDEA and special education in the United States .......... 3

II. The underlying administrative claim brought on behalf of D.R. .......... 6

Summary of the Argument .......... 10

Argument .......... 13

I. The District Court was correct to grant summary judgment to the defendants .......... 13

A. The District of Columbia was not a prevailing party .......... 13

1. The District voluntarily mooted the Complaint, depriving itself of prevailing-party status .......... 13

2. The District's arguments to the contrary are unpersuasive .......... 16

B. The Complaint was not frivolous when filed, and Mr. Straus did not continue to litigate after litigation became unreasonable or for an improper purpose .......... 23

II. A reversal would wreak havoc on the ability of disabled students to obtain necessary and legally required educational services .......... 28

Conclusion .......... 30

Certificate of Compliance .......... 31

Certificate of Service .......... 31

# TABLE OF AUTHORITIES

## Cases

*Alegria v. District of Columbia*,
391 F.3d 262 (D.C. Cir. 2004) ........ 23, 26

*Anthony v. Marion County*,
617 F.2d 1164 (5th Cir. 1980) ........ 17

*Blackman v. District of Columbia,*
185 F.R.D. 4 (D.D.C. 1999) ........ 4

*Blackman v. District of Columbia,*
454 F. Supp. 2d 1 (2006) ........ 4

**Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources,*
532 U.S. 598 (2001) ........ 10, 13, 16, 17, 21, 22

*Cantrell v. International Brotherhood of Electrical Workers,*
69 F.3d 456 (10th Cir. 1995) (en banc) ........ 17

*Christiansburg Garment Co. v. EEOC,*
434 U.S. 412 (1978) ........ 25

*Claiborne v. Wisdom*,
414 F.3d 715 (7th Cir. 2005) ........ 18, 19

*District of Columbia v. Jeppsen,*
514 F.3d 1287 (D.C. Cir. 2008) ........ 15, 20

*Hanrahan v. Hampton,*
446 U.S. 754 (1980) (per curiam) ........ 13

*Highway Equipment Co. v. FECO, Ltd.*,
469 F.3d 1027 (Fed. Cir. 2006) ........ 18

*Lesesne v. District of Columbia,*
447 F.3d 828 (D.C. Cir. 2006) ........ 25

---

* Authorities upon which we chiefly rely are marked with asterisks.

*Oil, Chemical & Atomic Workers International Union v. Department of Energy*, 288 F.3d 452 (D.C. Cir. 2002) ........ 22

*Riviera Distributors, Inc. v. Jones*, 517 F.3d 926 (7th Cir. 2008) ........ 17, 18

*School Committee of Burlington v. Department of Education*, 471 U.S. 359 (1985) ........ 23

*Sole v. Wyner*, 551 U.S. 74 (2007) ........ 21

*Summers v. Department of Justice*, 569 F.3d 500 (D.C. Cir. 2009) ........ 22

*Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782 (1989) ........ 13

*Winkelman ex rel. Winkelman v. Parma City School District*, 550 U.S. 516 (2007) ........ 5

**Statutes and Rules**

5 U.S.C. § 552(a)(4)(E) ........ 22

20 U.S.C. § 1400(c)(3) ........ 3

20 U.S.C. § 1400(d)(1)(B) ........ 5

20 U.S.C. § 1401(29) ........ 5

20 U.S.C. § 1412(a)(1)(A) ........ 24

20 U.S.C. § 1414 ........ 4

20 U.S.C. § 1414(d)(4)(A)(ii) ........ 24

20 U.S.C. § 1415 ........ 4, 18

20 U.S.C. § 1415(b)(6) ........ 24

20 U.S.C. § 1415(i)(3)(B) ........ 1, 5

20 U.S.C. § 1415(i)(3)(B)(i) ........ 23

20 U.S.C. § 1415(i)(3)(B)(i)(I) ........ 26

*20 U.S.C. § 1415(i)(3)(B)(i)(II) .......... 21, 23, 24, 25, 26

*20 U.S.C. § 1415(i)(3)(B)(i)(III) .......... 21, 23, 27

20 U.S.C. § 1415(i)(3)(D) .......... 26

20 U.S.C. § 1415(i)(3)(D)(i)(III) .......... 27

34 C.F.R. § 300.106 .......... 25

34 C.F.R. § 300.508(e) .......... 24

D.C. Mun. Regs. tit. 5, § 3021 .......... 24

D.C. Cir. R. 29(a) .......... 2

Fed. R. App. P. 29(a) .......... 2

Fed. R. Civ. P. 11 .......... 27

Fed. R. Civ. P. 11(b) .......... 28

Fed. R. Civ. P. 68 .......... 26

**Other Authorities**

Bill Turque, *D.C. Files Suit Over Special-Ed Case It Calls Frivolous,* Wash. Post, Dec. 13, 2008, at B2 .......... 6

Data Accountability Center, *Individuals with Disabilities Education Act (IDEA) Data, Part B Data & Notes* (2007), https://www.ideadata.org/PartBData.asp .......... 3, 4

Michael Birnbaum, *Slower Payment Hinders Advocacy, Lawyers Say,* Wash. Post, Jul. 16, 2009, at B4 .......... 6

Office of Special Education Programs, *History: 25 Years of Progress in Educating Children with Disabilities Through IDEA,* http://www.ed.gov/policy/speced/leg/idea/history.pdf .......... 3

Report of the Evaluation Team for the 2008/09 School Year, *Blackman v. District of Columbia,* No. 97-1629 (D.D.C. Sept. 25, 2009) (Doc. 2184) .......... 6

## GLOSSARY

| | |
|---|---|
| ACLU-NCA | American Civil Liberties Union of the National Capital Area |
| DCPS | District of Columbia Public Schools |
| IDEA | Individuals with Disabilities Education Act |
| IEP | Individualized Education Program |

## *AMICUS CURIAE'S* STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE

*Amicus curiae* the American Civil Liberties Union of the National Capital Area (ACLU-NCA) is the District of Columbia affiliate of the American Civil Liberties Union, a nonprofit membership organization with more than 500,000 members nationwide, devoted to protecting and defending the civil liberties and civil rights of all Americans. The American Civil Liberties Union has long been a leading advocate for the rights of the disabled, including disabled students.

Since its enactment three decades ago, the Individuals with Disabilities Education Act, a landmark piece of civil-rights legislation for disabled students, has given millions of disabled children access to essential education services that before were often unavailable. This case presents an important issue of first impression in this Court: what standard a government agency must satisfy to pursue a disabled student's attorney for attorneys' fees under the fee-shifting provision of the Act, 20 U.S.C. § 1415(i)(3)(B). The District's strained interpretation of that provision would threaten the decades of progress brought about by the Act and make it substantially more difficult for disabled children to obtain equal educational opportunities. ACLU-NCA seeks to participate as *amicus curiae* in order to bring to the Court's attention the

consequences for thousands of children if this Court were to reverse. ACLU-NCA's experience with the Individuals with Disabilities Education Act and the District of Columbia special education system will prove useful to the Court in its consideration of this appeal.

*Amicus* files this brief pursuant to Fed. R. App. P. 29(a), D.C. Cir. R. 29(a), and the Notice of Intent it filed on September 25, 2009. All parties have consented to the filing of this brief.

## BACKGROUND

### I. The IDEA and special education in the United States

Since its enactment in 1975, the Individuals with Disabilities Education Act (IDEA or the Act) has ensured that millions of disabled children receive a "free appropriate public education." 20 U.S.C. § 1400(c)(3). As the Department of Education acknowledged in 2000, the Act has transformed special education in this country: in 1970, only one in five disabled children received a public education, and many students were excluded from public schools by state law. Office of Special Education Programs, *History: 25 Years of Progress in Educating Children with Disabilities Through IDEA*, http://www.ed.gov/policy/speced/leg/idea/history.pdf.

By the fall of 2007, in contrast, more than 6.7 million children with disabilities were receiving public educational services under the IDEA. Data Accountability Center, *Individuals with Disabilities Education Act (IDEA) Data, Part B Data & Notes,* Table 1.1 (2007), https://www.ideadata.org/PartBData.asp (*IDEA Data*). Children with a wide range of disabilities, including speech and language impairments, autism, emotional disturbance, traumatic brain injury, and mental retardation, received services under the Act. *Id.* at Table 1-7. More than 10,000 students in the District of Columbia

alone, including more than 1,000 students with mental retardation, received services under the Act in 2007. *Id.* at Table 1-1, 1-3.[1]

To ensure that children and families receive appropriate educational services, the Act establishes procedures for evaluating and developing an individualized education program (IEP) for each child with a disability. *See* 20 U.S.C. § 1414. The Act also requires state educational agencies that receive assistance under the IDEA to establish procedural safeguards to ensure that parents are involved in overseeing their children's education and that children with disabilities receive appropriate educational services. Under those safeguards, parents can examine their children's records; receive notice of changes in a child's program; enter into voluntary mediation with education agencies to resolve disputes; bring administrative due-process complaints; and bring civil actions in court. *Id.* § 1415. Administrative due-process hearings like the one in this case are a crucial enforcement tool in ensuring that educational agencies meet their obligations under federal law.

---

1. Many of the District's special-education practices are governed by a consent decree that was entered into in 2006 following a District Court decision finding that the District had failed to fulfill its obligations under the IDEA. *See Blackman v. D.C.,* 454 F. Supp. 2d 1 (2006) (entering consent decree resolving class-action lawsuit against the District); *see also Blackman v. D.C.,* 185 F.R.D. 4, 7 (D.D.C. 1999) (recounting history of the lawsuit and appointing a special master).

The Act also provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs … to a prevailing party who is the parent of a child with a disability," or to prevailing education agencies in certain circumstances. *Id.* § 1415(i)(3)(B). This fee-shifting provision is an essential component of the Act. As the Supreme Court has explained, "Congress required States to provide adequate instruction to a child 'at no cost to parents,'" and it did not intend that "only some parents would be able to enforce that mandate." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 533 (2007) (quoting § 1401(29)). Instead, the Act "takes pains to 'ensure that the rights of children with disabilities and parents of such children are protected.'" *Id.* (quoting § 1400(d)(1)(B)). Because parents are likely to be unfamiliar with the law — and preoccupied with the care of their children — legal representation can be crucial in resolving disputes over a child's individualized education program.

Placing parents or their attorneys at risk of owing attorneys' fees when an educational agency takes action to moot a complaint would hinder the lawyers' ability to advance costs and enter contingent-fee engagements with parents who, in the great majority of special-education cases, cannot afford to pay attorney's fees and litigation costs during the litigation. The result would be fewer claims under the statute and fewer children receiving vital special-

education services, because the legal system has been a crucial guardian of disabled students' education rights.

The need for legal representation is particularly acute in the District of Columbia. Court monitors evaluating DCPS progress under the consent decree found that in the 2008–09 school year, hearing officer decisions and settlement agreements were timely implemented only 60% of the time — a notable improvement over previous years, though still short of the 80% standard set by the consent decree. *See* Report of the Evaluation Team for the 2008/09 School Year 11–12, *Blackman v. D.C.,* No. 97-1629 (D.D.C. Sept. 25, 2009) (Doc. 2184). Accordingly, District of Columbia parents frequently resort to bringing administrative complaints to obtain timely special-education services. *See, e.g.,* Bill Turque, *D.C. Files Suit Over Special-Ed Case It Calls Frivolous*, Wash. Post, Dec. 13, 2008, at B2. Indeed, "litigation 'is the reason that a lot of children get services at all.'" Michael Birnbaum, *Slower Payment Hinders Advocacy, Lawyers Say*, Wash. Post, Jul. 16, 2009, at B4.

## II. The underlying administrative claim brought on behalf of D.R.

D.R. is a student in the District of Columbia public schools who has been diagnosed as mentally retarded. J.A. 20–21. In 2007 a team was convened to develop an IEP for D.R. J.A. 22. The team ordered vocational and psychological evaluations in 2007 and 2008. *Id.* When it met on June 5, 2008, to review the

result of those evaluations, the IEP team determined that D.R. required a comprehensive psychiatric evaluation. *Id.* (Unlike vocational and psychological evaluations, a psychiatric evaluation is a medical procedure conducted by a medical doctor.) When, on August 15, 2008, more than two months after the IEP team ordered the psychiatric assessment, and just weeks from the start of the school year, the District had taken no steps to obtain that assessment, defendants John A. Straus and his law firm, James E. Brown & Associates, PLLC, brought the underlying administrative due-process complaint (the Complaint) on behalf of D.R.'s grandmother. J.A. 20–25.

On August 20, 2008, the District filed its Response to the Complaint, asking that it be dismissed. J.A. 26. Simultaneously, the District sent Mr. Straus a letter authorizing his client to obtain an independent psychiatric evaluation at the District's expense. J.A. 28. Although the letter resolved one of the issues raised in the Complaint, it did not address all of the Complaint's requests for relief, including a request that District convene the IEP team to revise the IEP consistent with the evaluation. *See* J.A. 23–25. That afternoon, the hearing officer held a prehearing conference by telephone, during which Mr. Straus first learned of the authorization. J.A. 17 ¶¶ 17–20; J.A. 31; J.A. 57 ¶ 13. The next day, DCPS reinstated a portion of D.R.'s IEP concerning community-based job training. J.A. 17 ¶ 22.

The hearing officer held a hearing on the Complaint on Sept. 9, 2008. J.A. 30. The hearing officer heard opening statements and discussed with counsel the District's letter authorizing an independent psychiatric evaluation. J.A. 37–54. The hearing officer explained that "what's happened here is that the chancellor's office, in an effort to try to mitigate some of the losses from litigation[,] has setup [*sic*] a unit, and they look at complaints that come in and they try to mitigate as quickly as possible. I'm not going to punish them for doing that." J.A. 53. The hearing officer then "terminated the proceeding as moot" without permitting any testimony. J.A. 31; *see also* J.A. 37–54. The hearing officer issued a decision dismissing the Complaint on September 12, 2008, J.A. 30–35, making four "findings of fact" and three "conclusions of law," including that "the issue of the psychiatric evaluation was mooted by DCPS' prompt authorization of an independent evaluation," J.A. 32.

The District then filed this lawsuit against Mr. Straus and his firm, seeking $1,752.25 in attorneys' fees. Of that amount, $537.50 was for work incurred on August 20, 2008, the very day the District authorized an independent psychiatric evaluation (and the day before the District reinstated the job-training portion of D.R.'s IEP), and $580.50 was for work incurred on September 19, 2008 and later, in connection with this lawsuit seeking attorneys' fees. *See* D.C.'s Mot. for Sum. Judg., Ex. E (Decl. of Laura George), *D.C.*

*v. Straus,* No. 08-2075 (D.D.C. Jan. 9, 2009) (Doc. 8-3, at 36). Accordingly, of the $1,752.25 in fees the District seeks, only $634.25 was for work associated with the hearing that it claims was frivolous. *See id.*

## SUMMARY OF THE ARGUMENT

I. The district court was correct to grant summary judgment to the defendants, because the District of Columbia cannot show either of the required elements to recover attorney's fees under the IDEA.

A. The District was not a prevailing party. Under *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598 (2001), a "prevailing party" must obtain a favorable decision on the merits that is backed up by the judicial imprimatur of an enforceable judgment. The Complaint in this case, in contrast, was dismissed purely for mootness, a classic non-merits decision, after the District unilaterally provided the main relief requested in the Complaint. The District did not obtain the favorable result required by *Buckhannon,* so it is not a "prevailing party" able to collect attorney's fees.

The District's arguments to the contrary are unpersuasive. First, the fact that the dismissal was styled as being with prejudice does not change that the District obtained that dismissal only by giving in and providing the relief requested in the Complaint; although it may not be subject to the same legal claim in the future, that is only because it has already done what the Complaint asked. Second, the District's argument that the hearing officer's decision was actually on the merits is plainly contradicted by the hearing

officer's own statement that he "terminated the proceeding as moot" and by his refusal to hear testimony on the Complaint's merits. Third, the District's argument that it "prevailed" because (it claims) the defendants litigated frivolously after the case became moot confuses the elements it must prove to obtain attorney's fees; whether a party prevails depends on the outcome of the case, not on what happened on the way to that outcome. Fourth, and finally, there is no legal support for the District's novel assertion that "prevailing" means two different things in the same statutory subsection.

B. Even if this Court concludes that the District was a "prevailing party," it should still affirm because the District cannot show that the Complaint was "frivolous, unreasonable, or without foundation" or that Mr. Straus continued to litigate "after the litigation clearly became frivolous, unreasonable, or without foundation" or "for [an] improper purpose." The district has abandoned its claim that the Complaint was frivolous when filed, and the defendants retained nonfrivolous legal claims — including a claim for attorney's fees — even after the District provided the principal relief requested in the Complaint.

II. Permitting an educational agency to obtain attorneys' fees by taking action to moot meritorious complaints would effectively block the one enforcement mechanism parents have when an educational agency fails to

comply with the law. This case provides a clear example of the risks: the District failed for months to comply with its obligation to prepare a psychiatric evaluation and only addressed the problem when the defendants brought the Complaint. The District's suggested rule would give it a simple strategy: ignore a student's rights until the parent brings a complaint; only then address the problem; and then pursue attorneys' fees. Few lawyers would be willing to undertake IDEA cases, and few parents would be willing to bring meritorious complaints, in the face of the risk of having to pay the agency's attorneys' fees.

## ARGUMENT

### I. The District Court was correct to grant summary judgment to the defendants

#### *A. The District of Columbia was not a prevailing party*

The District of Columbia was not a prevailing party in the underlying administrative hearing, because all it obtained was dismissal after it voluntarily mooted the principal issue presented in the Complaint.

##### *1. The District voluntarily mooted the Complaint, depriving itself of prevailing-party status*

Under the Supreme Court's decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598 (2001), a "prevailing party" is "one who has been awarded some relief by the court," *id.* at 603, or, in other words, one who has "prevailed on the merits of at least some of his claims," *id.* (quoting *Hanrahan v. Hampton,* 446 U.S. 754, 758 (1980) (per curiam)). This is so because "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees.'" *Buckhannon,* 532 U.S. at 604 (citing *Texas St. Teachers Assn. v. Garland Ind. Sch. Dist.,* 489 U.S. 782, 792–93 (1989)). Accordingly, a party must obtain both a favorable result and a judicial imprimatur on that result, in order to be a "prevailing party."

The Complaint, in contrast, was dismissed for mootness, not on the merits, after the District essentially gave in and provided the main relief requested in the Complaint. That mootness was the basis for the hearing officer's decision is clear from the decision itself, which the states directly that the hearing officer "terminated the proceeding as moot." J.A. 31. And the rest of the decision reinforces the non-merits nature of the dismissal. The decision makes only three "conclusions of law":

- that the Complaint's request for a psychiatric evaluation "was mooted by DCPS' prompt authorization of an independent evaluation," J.A. 32;
- that "Petitioner would have faced an uphill burden of proving that, by the time the Complaint was filed, Petitioner had suffered educational harm as a result of DCPS' failure to conduct the evaluation ordered on June 5th," *id.*;
- and that Mr. Straus filed the Complaint without foundation and continued to litigate after the Complaint became frivolous, J.A. 33.

The latter two conclusions, however, were purely gratuitous:[2] Mr. Straus was not permitted to offer any testimony concerning educational harm suffered by D.R., *see* J.A. 37–54, and, as the District conceded below, eligibility for fees under the IDEA (and thus whether Mr. Straus filed the Complaint without foundation or litigated frivolously) is an issue for the district court, not the

---

2. They were also plainly wrong. *See* Argument Part I.B (frivolousness) & n.6 (educational harm).

hearing officer. *See* Pl.'s Mot. for Sum. Judg. 10, *D.C. v. Straus,* No. 08-2075 (D.D.C. Jan. 9, 2009) (Doc. 8); *see also* J.A. 62–63 (decision below) (observing that "[w]hether Straus needlessly filed or maintained the administrative litigation arguably was not an issue presented in the complaint or litigated by the parties"). Indeed, there was no basis for either of these "conclusions of law" in the hearing officer's four "findings of fact," three of which concerned only pre-hearing events, and the last of which was simply that the District authorized an independent psychiatric evaluation five days after the Complaint was filed. *See* J.A. 31–32.

The conclusion that the District is not a prevailing party because it did not win on the merits is consistent with this Court's decision in *District of Columbia v. Jeppsen,* 514 F.3d 1287 (D.C. Cir. 2008), which expressly reserved the question whether a defendant "prevails" after a non-merits dismissal. *Id.* at 1291. *Jeppsen* noted that dismissal "on a jurisdictional ground, that the action fails either in law or in fact, might give the defendant all it could receive from a judgment on the merits." *Id.* at 1290. True as that may be of a dismissal for lack of jurisdiction, a dismissal for mootness cannot possibly "give the defendant all it could receive from a judgment on the merits" when the defendant *created* the mootness by providing the relief sought by the plaintiff. *Cf.* J.A. 53 ("[W]hat's happened here is that the chancellor's office, in an effort

to try to mitigate some of the losses from litigation[,] has setup [*sic*] a unit, and they look at complaints that come in and they try to mitigate as quickly as possible.”). To the contrary, it was the complainant who obtained “all [she] could receive from a judgment on the merits.”

*Buckhannon* makes clear that a “prevailing party” must obtain both a favorable result and a judicial imprimatur on that result. 532 U.S. at 603, 605. Here, the District obtained neither the imprimatur nor the favorable result. Accordingly, it was not a “prevailing party,” and the district court’s judgment should be affirmed.

*2. The District’s arguments to the contrary are unpersuasive*

The District presents three arguments that it was a “prevailing party” in the administrative hearing, plus one additional argument that it was “prevailing” even if it was not a “prevailing party.” None of these arguments stand up to scrutiny.

*First,* the District’s argument that the dismissal of the Complaint with prejudice was sufficient to confer prevailing-party status is inconsistent with *Buckhannon* and would make the administrative adjudication process less efficient and effective. As discussed above, under *Buckhannon,* a “prevailing party” must obtain both a favorable result on the merits and a judicial imprimatur on that result. A dismissal — whether with or without prejudice

— obtained after the defendant provided the main relief requested in the Complaint provides neither.

The District points to no case concluding that a defendant had prevailed after the court dismissed the plaintiff's case as moot. Instead, the District cites two pre-*Buckhannon* cases from other Circuits with vastly different facts than those presented here. In *Anthony v. Marion County*, 617 F.2d 1164 (5th Cir. 1980), the court concluded that the defendant was a prevailing party after the plaintiff's case was dismissed with prejudice for failure to prosecute, noting that "[d]ismissal with prejudice … is an extreme sanction" warranted only by "a clear record of delay or contumacious conduct by the plaintiff." *Id.* at 1167 (internal quotation omitted). And *Cantrell v. International Brotherhood of Electrical Workers,* 69 F.3d 456 (10th Cir. 1995) (en banc), which involved dismissal by the plaintiff before trial, holds that *any* voluntary dismissal by a plaintiff, with or without prejudice, makes the defendant a "prevailing party," even if the dismissal affected no change in the legal relationship between the parties — a result plainly disapproved of by *Buckhannon.*

The post-*Buckhannon* decisions cited by the District are similarly inapposite. *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926 (7th Cir. 2008), arose under the Copyright Act, which, unlike the IDEA and most other federal fee-shifting statutes, "treats both [plaintiffs and defendants] equally" and lets

defendants recover attorneys' fees "as a matter of course." *Id.* at 928. Although the district court in *Riviera* had framed the issue as whether a defendant prevails when his position was not sustained on the merits, the dismissal is best understood as being merits-based, because it came when the plaintiff "conceded that it lacked the evidence to prove its claim." *Id. at* 927.[3]

Similarly, the court in *Highway Equipment Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006), held that "as a matter of patent law," dismissal with prejudice conveyed prevailing-party status on the defendant when the dismissal was based on a covenant not to sue — a determination that the plaintiff did not have a legally cognizable claim on the merits. The dismissal in this case, in contrast, was based on mootness, not on the merits.

Although one court has held since *Buckhannon* that dismissal with prejudice confers prevailing-party status when it terminates the claims for the purpose of claim preclusion, *see Claiborne v. Wisdom*, 414 F.3d 715, 719 (7th Cir. 2005), the reasoning of that decision does not apply when the dismissal is

---

3. The Seventh Circuit also found *Riviera* to be "an especially good candidate for fee shifting … because [the plaintiff's lawsuit] was filed in the teeth of an agreement not to sue" that the parties had reached in a previous settlement. 517 F.3d at 929. No such agreement existed here; indeed, the IDEA contemplates that parties will seek redress through administrative due-process complaints and civil actions. *See generally* 20 U.S.C. § 1415.

for mootness. The Seventh Circuit held that the dismissal of Claiborne's claim, with prejudice, was a merits ruling because it "terminate[d] any claims she may have had against [the defendants] arising out of this set of operative facts." *Id.* That the defendants would not be subject to such claims in the future was the favorable outcome required by *Buckhannon.* In contrast, when a claim is mooted by the defendant's own action, as happened here, the defendant has not been made better off; although the defendant is no longer subject to the same legal claim, that is only because it has already provided the requested relief. A homeowner who terminates a foreclosure suit with prejudice by handing over the keys and moving out has hardly "prevailed" against the bank, even though the bank cannot again foreclose on the same mortgage.

*Second,* the District's argument that the hearing officer's decision in fact *was* on the merits is plainly inconsistent with the record. As discussed above,[4] the hearing officer's decision states clearly that he "terminated the proceeding as moot." J.A. 31. The District relies heavily on statements in the hearing officer's decision expressing skepticism about whether the student had suffered any educational harm, including an observation that the student

4. *See* Argument Part I.A.

"*would have* faced an uphill burden of proving ... educational harm," J.A. 32 (emphasis added), but that misguided speculation[5] certainly did not constitute a ruling on the merits. Indeed, the hearing officer stated repeatedly during the hearing that "this matter [is] moot," J.A. 34, and he made no factual findings and entertained no testimony on the issue. *See* J.A. 32–33; J.A. 37–54. These statements accordingly could not have formed the basis for the Complaint's dismissal.

This case is thus distinct from *Jeppsen*, on which the District relies. In that case, this Court held that the defendant parent could recover attorney's fees only because the district court's decision, "properly understood, was a decision on the merits." 514 F.3d at 1291. The Court explicitly declined to decide whether a defendant may "prevail" by obtaining a non-merits dismissal. *See id*. at 1290–91. Instead, the Court held that the defendant had prevailed because the district court ruled that the relief the school was seeking — private tuition reimbursement from the parents — was unavailable as a matter of law. *Id*. at 1291. In this case, in contrast, the hearing officer held simply that the District's action mooted the case — a classic non-merits decision.

5. *See* n.6.

*Third,* the District's argument that it was a "prevailing party" because (it claims) Mr. Straus continued to litigate after the Complaint became moot simply confuses the two elements it must prove to recover attorneys' fees. Whether a party prevails depends on the outcome of the case, not on what happened on the way to that outcome. *See Sole v. Wyner,* 551 U.S. 74 (2007) (holding that plaintiff did not "prevail" by obtaining a preliminary injunction when the trial court later denied a permanent injunction). The District cites no legal support for the novel proposition that it can be a prevailing party not because of the outcome of the case, but because of Mr. Straus's conduct in the course of the case.

*Fourth,* and finally, there is no support for the District's assertion that "prevailing" means two different things within one statutory subsection, and thus that "a prevailing State educational agency or local educational agency," 20 U.S.C. § 1415(i)(3)(B)(i)(III), is somehow different from "a prevailing party who is a State educational agency or local educational agency," 20 U.S.C. § 1415(i)(3)(B)(i)(II). The District did not make this argument to the district court and consequently has forfeited it. But regardless, the Supreme Court noted in *Buckhannon* that it reads the "nearly identical provisions" in federal fee-shifting statutes consistently, 532 U.S. at 603, n. 4, and this Court has previously held that phrases such as "substantially prevailed" are

synonymous with "prevailing party." *Oil, Chemical & Atomic Workers Intern. Union v. Dep't of Energy*, 288 F.3d 452, 455 (D.C. Cir. 2002) (*OCAW*) (interpreting the Freedom of Information Act), *superseded by statute,* 5 U.S.C. § 552(a)(4)(E); *accord, Summers v. Dep't of Justice*, 569 F.3d 500 (D.C. Cir. 2009). The District's argument would require this Court to make fine distinctions within and among the "dozens of fee-shifting statutes," some of which are admittedly "worded slightly differently from others," *OCAW*, 288 F.3d at 454 — an approach soundly rejected by *Buckhannon* and *OCAW.*

* * *

As the district court observed, granting the District prevailing-party status "would be a perverse result that would stand the statute on its head." J.A. 66. Prior to *Buckhannon*, Mr. Straus's client would have, under most Circuits' law, "prevailed" in the administrative hearing because the Complaint brought about a voluntary change in the District's conduct. *Buckhannon* rejected this catalyst theory, but it does not follow from that rejection that the *defendant* instead prevailed by voluntarily correcting its behavior. In every other case cited by the District, it is the plaintiff's action — such as failure to prosecute, or failure to produce adequate evidence to support its claims — that led to dismissal. And this outcome would be especially remarkable under the IDEA, which makes it more difficult for school districts than for parents to recover

attorneys' fees, and "include[s] various procedural safeguards," "including notice of the right to attorneys' fees … to enable 'full participation of the parents.'" *Alegria v. District of Columbia*, 391 F.3d 262, 266 (D.C. Cir. 2004) (quoting *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 368 (1985)). Awarding attorneys' fees to an educational agency that has admittedly delayed a student's assessment would discourage parental participation and work at cross-purposes with the statute.

### *B. The Complaint was not frivolous when filed, and Mr. Straus did not continue to litigate after litigation became unreasonable or for an improper purpose*

Even if this Court concludes that the District of Columbia was a "prevailing party," it should still affirm, because the District cannot show any of the other three required elements under § 1415(i)(3)(B)(i): that the Complaint was "frivolous, unreasonable, or without foundation," § 1415(i)(3)(B)(i)(II); that Mr. Straus continued to litigate the Complaint "after the litigation clearly became frivolous, unreasonable, or without foundation," *id.*; or that the Complaint was "presented for [an] improper purpose," § 1415(i)(3)(B)(i)(III).

*First,* the District has abandoned its claim that the Complaint was frivolous, unreasonable, or without foundation when filed. In any event, it plainly was not, as the District quickly granted the main relief requested, within days after the Complaint was filed. *See* J.A. 6; Pl.'s Br. 7–8 & 29. And the

Complaint was well-grounded in the law: the IDEA expressly permits parents to bring an administrative complaint when an educational agency has failed to perform a necessary evaluation. *See* § 1415(b)(6).

*Second,* the administrative proceeding had not "clearly [become] frivolous, unreasonable, or without foundation," § 1415(i)(3)(B)(i)(II), by September 9, 2008, when the hearing officer convened a hearing on the Complaint. *See* J.A. 31. The District cites *nothing* to support its claim that once it had authorized an independent evaluation, "Mr. Straus was clearly entitled to no further relief for his client." Pl.'s Br. 29. The District is simply wrong. Although the District had unilaterally granted the complainant the authority to obtain an independent psychiatric evaluation at the District's expense, it had not granted the other relief requested in the Complaint, including:

- that the hearing officer make a finding that the child was denied a free and appropriate public education, *see* 20 U.S.C. § 1412(a)(1)(A);
- that the District "convene the IEP team to review and revise the IEP consistent with" the psychiatric assessment, *see* 20 U.S.C. § 1414(d)(4)(A)(ii);
- that the District provide copies of "all evaluation reports and educational records," *see* D.C. Mun. Regs. tit. 5, § 3021; and
- that the District provide an "explanation of why DCPS proposed or refused to take the action raised in the complaint," *i.e.,* perform the previously ordered psychiatric evaluation, *see* 34 C.F.R. § 300.508(e).

All of these requests for relief were well-grounded in the law (and were certainly not "frivolous, unreasonable, or without foundation"); they provided a sufficient justification under § 1415(i)(3)(B)(i)(II) to keep litigating.[6] Mr. Straus may not have prevailed in those arguments, but that does not mean that pursuing them was unreasonable; as the Supreme Court has cautioned, "it is important [to] resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421–22 (1978).

Indeed, even the demand that the complainant be deemed a prevailing party and awarded attorney's fees, J.A. 23 & 25, was not "clearly [] frivolous,

---

6. The District's argument that the case was frivolous because the student could not have suffered any educational harm over the summer, *see* Pl.'s Br. 22, is without merit. Although a parent bringing a claim under the Act must show some effect on the child's substantive rights instead of a mere procedural violation, *see Lesesne v. D.C.,* 447 F.3d 828, 834 (D.C. Cir. 2006), the District's failure to conduct the ordered psychiatric evaluation before the Complaint was filed in mid-August would have affected the child's substantive rights when school began shortly thereafter. Moreover, the hearing officer did not afford Mr. Straus an opportunity to present testimony about the child's educational harm, whether that harm was already occurring or would soon occur. *See* J.A. 39–54. The need for such testimony cannot be avoided simply because it was the summer; federal law specifically provides for year-round "extended school year" educational services when required under a student's individualized education program. *See* 34 C.F.R. § 300.106.

unreasonable, or without foundation," § 1415(i)(3)(B)(i)(II). The Act permits a parent who is a prevailing party to recover fees. *See* § 1415(i)(3)(B)(i)(I). Although the District correctly notes that the District's authorization of an independent evaluation is not enough to confer prevailing-party status on the complainant, *see* Pl.'s Br. 29, a decision finding that the District denied his client a free and appropriate public education, or ordering the IEP team to meet, *would have* made his client a prevailing party, because it would have had the necessary "judicial imprimatur" of an enforceable judgment. *See Alegria,* 391 F.3d 262. Such an outcome was a reasonable possibility at the hearing, so Mr. Straus had a reasonable basis to continue litigating for attorney's fees, and the litigation had not "clearly [become] frivolous, unreasonable, or without foundation."[7]

---

7. The hearing officer was apparently under the impression that the District's authorization of an independent psychiatric evaluation within ten days of the Complaint's filing immunized the District from owing additional attorneys' fees. *See* J.A. 45 ("[T]here's a provision in the law that says if they settle the case within 10 days of the hearing you get no more attorney's fees."). The hearing officer was apparently referring to 20 U.S.C. § 1415(i)(3)(D), which limits attorneys' fees when a parent has rejected a written offer of settlement and the parent does not then obtain relief more favorable than the settlement. *Cf.* Fed. R. Civ. P. 68. The section is irrelevant because the District's letter authorizing an independent psychiatric evaluation was not a written offer of settlement. It unilaterally conveyed a benefit, rather than being contingent upon settlement of the Complaint. *See* J.A. 28. Moreover, even if it was a settlement offer, § 1415(i)(3)(D) limits fees only if the ultimate

*(footnote continued on next page…)*

*Third,* and finally, the Complaint was not "presented for [an] improper purpose," § 1415(i)(3)(B)(i)(III). Mr. Straus plainly did not have an improper purpose when the Complaint was filed, as the District quickly granted the main relief requested. Indeed, the hearing officer acknowledged at the hearing that the letter authorizing an independent evaluation was sent in response to the Complaint: "[T]he chancellor's office, in an effort to try to mitigate some of the losses from litigation[,] has setup [*sic*] a unit, and they look at complaints that come in and they try to mitigate as quickly as possible." J.A. 53. A complaint that is legally meritorious — as the hearing officer acknowledged this one was — cannot be presented for an "improper" purpose.

Even assuming that the District is right that a complaint is "presented" each time an attorney argues in support of it, Mr. Straus did not present the Complaint for an improper purpose by proceeding with the hearing.[8] The

---

*(footnote continued from previous page...)*

relief obtained "is not more favorable to the parents than the offer of settlement," § 1415(i)(3)(D)(i)(III). Mr. Straus, however, did not know *at the time of the hearing* that he would not obtain more favorable relief, so his effort to pursue attorney's fees had not "clearly [become] frivolous, unreasonable, or without foundation."

8. The District cites no law in support of its argument that the requirement that a document be "presented" to a hearing officer, § 1415(i)(3)(B)(i)(III), has the same meaning as in Rule 11 of the Federal Rules of Civil Procedure. Unlike § 1415(i)(3)(B)(i)(III), Rule 11 expressly applies to arguments made in

*(footnote continued on next page...)*

District argues only that Mr. Straus intended to needlessly increase the cost of litigation by seeking attorney's fees after the District had granted an independent psychiatric evaluation, but as described above, the District's attempt to mitigate, as welcome as it was, did not resolve all the issues in the Complaint. Accordingly, Mr. Straus's continued litigation could not have been for an improper purpose.

## II. A reversal would wreak havoc on the ability of disabled students to obtain necessary and legally required educational services

Permitting an educational agency to obtain attorneys' fees by taking action to moot a case would effectively block the one enforcement mechanism parents have when an educational agency drags its heels and refuses to comply with the law. The facts of this case aptly demonstrate the need for a vigilant special-education bar in forcing the District to comply with the IDEA. Here, the child's IEP team concluded on June 5, 2008 that a psychiatric assessment was needed and ordered that the evaluation be performed by August 5, 2008. Defs.' Br. 7. The District failed to comply, so ten days after the deadline, Mr. Straus filed the Complaint, requesting that the evaluation

---

*(footnote continued from previous page…)*

support of a previously filed pleading. *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading … — whether by signing, filing, submitting, *or later advocating it*…" (emphasis and alteration added).).

actually be performed. Although the District clearly knew of its obligation to perform the psychiatric evaluation, it was not until Mr. Straus filed the Complaint that the District addressed that obligation. As the hearing officer acknowledged, the Complaint was the tool that finally got the District's attention. J.A. 53.

Special education attorneys provide a critical due-process protection against these unreasonable and unlawful delays in delivering a free and appropriate public education. The District's suggested rule would give it a convenient out: ignore a student's rights until the student's parent brings a due-process complaint; only then address the problem; and then pursue the parent's attorney for fees. If filing a *meritorious* complaint carries the risk of having to pay the District's attorneys' fees, many parents and guardians of disabled students will avoid filing meritorious complaints, and few lawyers will be willing to undertake IDEA cases. That approach would gut the IDEA's enforcement mechanism; it plainly was not the intent of the IDEA's fee-shifting provision.

## CONCLUSION

The district court correctly concluded that the District could not voluntarily provide the relief requested in a complaint, mooting the complaint, and then claim prevailing-party status. For that reason and the other reasons set out in this brief and in the appellees' brief, the District cannot recover attorneys' fees under the IDEA's fee-shifting provision. This Court should affirm.

Respectfully submitted,

/s/ Roger A. Ford

CAROLINE M. BROWN
ROGER A. FORD
COVINGTON & BURLING LLP††
1201 Pennsylvania Ave., NW
Washington, DC 20004
(202) 662-6000

*Counsel for Amicus Curiae American Civil Liberties Union of the National Capital Area*

*OF COUNSEL:*
ARTHUR B. SPITZER
KAITLIN R. DUNNE†
AMERICAN CIVIL LIBERTIES UNION OF THE NATIONAL CAPITAL AREA
1400 20th Street, NW, Suite 119
Washington, DC 20036
(202) 457-0800

Dated: October 9, 2009

† Admitted to the Bar of New York; not admitted to practice in the District of Columbia. Supervised by attorneys admitted to the Bar of the District of Columbia.

†† Danielle S. Barbour also contributed to the preparation of this brief. She is not yet admitted to the Bar of any jurisdiction.

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief of *amicus curiae* complies with the type-volume limitation of Fed. R. App. P. 29(d) and Fed. R. App. P. 32(a)(7)(B) and, contains 6,260 words, excluding the portions of the brief excluded by Fed. R. App. P. 32(a)(7)(B)(iii).

/s/ Roger A. Ford
Roger A. Ford

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing brief of *amicus curiae* were served today upon counsel of record for all parties via the Court's electronic filing service.

Dated: October 9, 2009

/s/ Roger A. Ford
Roger A. Ford